# BENJAMIN F. WILLIAMS

## *v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW—*organization of a grand jury.* While it is usual, and would be more formal, to insert in the record in a criminal case, the names of the persons composing the grand jury who found the indictment, yet it

is not essential, to support a verdict of guilty, that the record should affirmatively show even that the requisite number of grand jurors was present at the time of the organization of the body.

2.  So where the record in a case where the defendant was convicted upon the charge of murder, showed that the grand jury who found the indictment "was called, impanelled and sworn," and that a foreman was appointed, it was *held*, the necessary intendment was, that the grand jury so sworn was properly organized.

3.  EVIDENCE IN CRIMINAL CASES—*in respect to a conspiracy.*  When life and liberty are at stake, every circumstance connected with the alleged crime, and which may tend to excuse or palliate the conduct of the party charged, or explain the motives, should be submitted to the jury.

4.  On the trial of a party charged with murder, the evidence tended to show that the fatal blow was struck while the prisoner and the deceased were engaged in a fight, which was the result of a conspiracy between deceased and several others "to clean out or whip" the prisoner and his friends, the arrangement being that deceased should make the attack upon the prisoner, which he did:  *Held*, it was competent for the prisoner to prove what was done by the parties, in pursuance of that plan or arrangement, to carry into effect the objects of the conspiracy, if one existed.

5.  Knowledge of the conspiracy had come to the prisoner, and the full development of the facts, as shown in the acts of the parties in the prosecution of their unlawful purpose, was proper, as tending to explain the *animus* of deceased at the time of the conflict, and also to enable the jury to determine whether the prisoner was prompted by a reasonable and well-grounded belief that he was in danger of losing his life, or suffering great bodily harm.

WRIT OF ERROR to the Circuit Court of Wayne county; the Hon. JAMES M. POLLOCK, Judge, presiding.

The opinion states the case.

Messrs. TANNER & CASEY, Messrs. HANNA & CONGER, and Messrs. ROBINSON, KNAPP & SHUTT, for the plaintiff in error.

Mr. WASHINGTON BUSHNELL, Attorney General, for the People.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This was an indictment for murder, returned by the grand jury of White county, and taken by change of venue to Wayne county.

A trial was had in the circuit court of Wayne county, and the jury found the plaintiff in error guilty of murder, and fixed the period of his imprisonment in the penitentiary at the term of fourteen years.

Motions for new trial and in arrest of judgment were made and overruled, and thereupon the court pronounced sentence in accordance with the verdict. To reverse this judgment, the case is brought before us by writ of error.

It is objected, that the record of the White county circuit court is fatally defective, in not showing a proper organization of the grand jury which presented the indictment, and that it should affirmatively appear that at least sixteen persons were impanelled and sworn, in open court, so as to constitute full compliance with the statute.

After the meeting of the court, the record does show that "the grand jury was called, impanelled and sworn;" that Carter J. Kelly was duly appointed and sworn as foreman, and that the grand jury was then charged by the court, and retired to consider of presentments. It is usual, and would be more formal, to insert the names of the persons composing the jury in the record. The statute, however, does not require it, but only commands the selection of twenty-three persons by the board of supervisors or county court, and that they shall be summoned by the sheriff—any sixteen of whom shall constitute a grand jury. The only duty imposed upon the circuit court, is, to impanel the jury, appoint a foreman and cause the proper oath to be administered. The record sufficiently shows that the statute was complied with, when it recites that the grand jury was called, impanelled and sworn, and a foreman appointed. The necessary intendment is, that the grand

jury so sworn was properly organized. In such case, a reasonable presumption must be indulged, that the court performed its duty. The court, then, properly overruled the motion in arrest, for the alleged error in the record.

The second error assigned, is the refusal of the court to permit Thomas J. Bogeman to answer certain questions propounded to him during his examination as a witness.

The evidence discloses that plaintiff in error stabbed Koontz, the deceased, with a knife, from which wound he died. There is also evidence tending to prove, that at the time of the fatal stab, the parties were engaged in a fight; that deceased had advanced upon the prisoner and knocked him down, and that deceased and four other persons had conspired " to clean out or whip the Williamses," and that, by the arrangement, the deceased was to assail the prisoner.

The counsel for the prisoner asked the witness, Bogeman, the following questions:

" If there was a conspiracy or combination between deceased and others, to whip defendant and others mentioned in the conspiracy, on the day in question, state what was done by the parties, in pursuance of ·that plan or arrangement, to carry into effect the objects of the conspiracy.

" Do you know whether the arrangement which deceased told you of on the morning of the fight was carried out? If so, state how.

" State what you know, if anything, as to how the arrangements entered into, if any arrangements were made, were carried out."

All of them were objected to by the people, and the court sustained the objection. To this ruling exceptions were taken at the time.

If such a combination existed, it was for an unlawful and criminal purpose, and its full development should have been made to the jury. This combination was communicated to

the prisoner, according to the testimony of John Williams. The court allowed the fact, that a conspiracy had been formed, to be proved. This was right, for the purpose of manifesting the *animus* of the deceased at the time of the struggle. Then all acts done by the conspirators, in the furtherance of a common design—in the accomplishment of an unlawful purpose—were eminently proper for the consideration of the jury. Such acts would have disclosed whether the agreement was mere vaunt, or a settled determination to consummate the proposed plan. They would have aided the jury materially in determining whether the prisoner was, at the time of the difficulty, prompted by a reasonable and well-grounded belief that he was actually in danger of losing his life, or suffering great bodily harm. *Campbell* v. *The People*, 16 Ill. 17.

If the deceased and others had deliberately formed the combination indicated, and had made arrangements for the prompt fulfillment of their common purpose in assailing the prisoner, all their acts in connection therewith would serve to characterize the conduct of the deceased at the time of the affray. The inference would be reasonable that the prisoner was sought for the purpose of executing the common design.

When life and liberty are at stake, every circumstance connected with the alleged crime, and which may tend to excuse or palliate the conduct of the party charged, or explain the motive, should be submitted to the jury.

We think the questions were proper, and should have been answered.

As this case will have to be reversed and sent back for a new trial, we forbear any comment upon the evidence.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*