JAMES R. BARRON

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. GRAND JURY—*legality of its organization.* The proper practice is, and the statute requires, that twenty-three persons shall be summoned for a grand jury, but as sixteen persons may constitute the grand jury, an indictment found by one composed of nineteen persons may be a legal finding after verdict, there being no objection made by motion to quash, or challenge to the array.

2. CHANGE OF VENUE—*when discretionary.* Where the law gives the court, trying a criminal case, a large discretion to grant or deny a petition for a change of venue, if its refusal to grant one is urged as error, it must be shown that the court abused its discretion.

3. EVIDENCE—*of circumstances showing guilt.* The fact that one accused of crime gave "straw bail," and forfeited his recognizance by voluntary absence, taken in connection with the further fact that such party passed under various *aliases*, may be considered by the jury, on the trial, as evidence bearing on the question of his guilt.

4. SAME—*acts and declarations of one in concert with prisoner.* Where two or more persons are shown to be in concert for a bad purpose, the acts and declarations of one in the accomplishment of the purpose, are the acts and declarations of all, and evidence against them.

5. Where the complicity of a party on trial for larceny and receiving stolen goods is shown with another in the affair, then whatever that other said or did in regard to the goods, is proper evidence against the prisoner.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. TULEY, STILES & LEWIS, and Mr. A. S. TRUDE, for the plaintiff in error.

Mr. CHARLES H. REED, State's Attorney, for the People.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an indictment in the Criminal Court of Cook county, against James R. Barron and Ignatius Schœn, returned by the grand jury at the March term, 1873, the first count of which charged the prisoners jointly with larceny, and the second count with receiving stolen property, knowing it to have been stolen.

At the succeeding April term, Schœn was tried and acquitted. At the February term, 1874, Barron was put on his trial, which resulted in a disagreement of the jury. On the same day a special *venire* for twenty-three jurors was awarded, returnable on the next morning. Whereupon, the prisoner filed a petition for a change of venue, which being denied, thereupon he entered a motion for a continuance, which was denied,

and his challenge to the array of jurors having been denied, and also his challenges for cause, he was again placed on trial.

The jury found the prisoner guilty of receiving stolen property, as charged in the second count, and fixed his punishment at imprisonment in the penitentiary for the term of seven years. The court overruled a motion for a new trial, and also a motion in arrest of judgment, and rendered judgment in accordance with the verdict of the jury.

The record is brought here by writ of error, and various errors are assigned.

The first point made is, that, on the order for a special *venire* of twenty-three good and lawful men of Cook county, to serve as grand jurors at that term, but nineteen persons were returned, and therefore the body finding the indictment was illegally constituted, and their act was without the authority of law.

No objection to this mode of executing the *venire* was made in the court below in any form, and it is now too late to make it. The proper practice doubtless is, and such is the requirement of the statute, and of this special *venire*, that twenty-three persons shall be summoned, but it is expressly provided that sixteen of them shall be sufficient to constitute the grand jury. An indictment found by a grand jury composed of nineteen persons, would, after verdict, no objection having been made by motion to quash the indictment, or by challenging the array, be a legal finding.

It was said, in *Williams* v. *The People*, 54 Ill. 422, that, to support a verdict of guilty on an indictment for murder, it was not essential the record should affirmatively show even that the requisite number of grand jurors was present at the time of the organization of the body.

If this grand jury was not lawfully assembled and organized, that fact should have been presented to the court by a motion to quash, or by challenging the array, as in *Stone* v. *The People*, 2 Scam. 332.

In reply to this, it is urged by the counsel for the prisoner, that a motion in arrest of judgment was duly entered, based

on this irregularity, which the court denied, and reference is made to *Miller* v. *The State*, 33 Miss. 361, in support of the motion. Reference is also made to *The People* v. *McKay*, 18 Johns. 212, and *The State* v. *Simonds*, 36 Maine, 128, to the same purport.

There may be some statute in each of those States allowing this mode of proceeding. On general principles, a motion in arrest of judgment can only be sustained for some defect appearing on the face of the record. No defect of record appears in this case, and the only mode by which to present the question would be, under our practice, by a motion to quash, supported by affidavits, or by challenge of the array. At best, it is more formal than real, and section 9 of the Criminal Code provides, that no motion in arrest of judgment, or writ of error, shall be sustained for any matter not affecting the real merits of the offense charged in the indictment. R. S. 1874, p. 408.

The next point made is, that the court erred in refusing an order to change the venue on the petition of the prisoner.

The petition for a change of venue was accompanied by many exhibits—extracts from newspapers and the like—tending to show that great efforts had been made to draw the attention of the public mind to this case, and to arouse it to a sense of the enormity of the deed committed by the prisoner, but all this is not unusual in cases of this description, and can not be prevented. But the statute in force at the time of this application gave a large discretion in the judge trying the cause, to grant or deny the petition, and it is impossible for this court to say the discretion has been abused.

The next point is, that the prisoner was not tried by an impartial jury, and herein, of the disallowance of the challenge, for cause, of Mr. Dixon and Mr. Hammond, two of the jurors impanelled.

The remark of the State's Attorney, alluded to, if made in the presence and hearing of the new panel, and intended for them, was certainly very injudicious and improper, but it does not appear to have been so made.

Upon the question of the competency of the jurors named, they came within the provisions of section 14 of chap. 78, title "Jurors," p. 633, R. S. 1874, and were competent.

The next point made by appellant is, that improper evidence was admitted on behalf of the people, and in this connection his counsel cites the testimony of Mr. Barret, the deputy clerk, in regard to what was done by the court in admitting the prisoner to bail, he objecting to the introduction of the record showing the proceedings. It appears the object of the State's Attorney was, not only to show the prisoner had given bail for his appearance to answer the indictment for larceny, but that he had forfeited the recognizance by his voluntary absence, and further to show that the bail, although accepted by the court, was "straw bail" only. This was done to use as an argument against the prisoner—to argue, from these facts, that his fleeing from the prosecution was evidence to be considered by the jury as tending to show guilt. This, taken in connection with the various *aliases* under which the prisoner passed, was matter proper for the consideration of the jury.

Flight, an attempt to escape after indictment found, or even before, on a criminal charge being preferred against one, has always been held a circumstance against a prisoner, if unexplained. 1 Wharton's Cri. Law, sec. 714, and examples and cases there given.

It is not necessary to consider the specific objections made by the prisoner to portions of the evidence, whether to be considered as properly rebutting on evidence in chief. In prosecutions of this character, it is somewhat difficult, if not impossible, to avoid trenching on forbidden ground, but when a court, viewing with a calm and unprejudiced scrutiny the whole ground, shall find that no injury was done the prisoner by slight departures from the true path, and that no rule of law has been withheld from him to his prejudice, the court will not, for slight error of this kind, set aside a verdict. The question for this jury to try was, the guilt of the prisoner— did he steal these goods, or receive them knowing them to be stolen.

If Mills, the agent of the owners of the goods, from whose possession they were taken, was worthy of belief, and that does not seem to be questioned, they were feloniously taken, and they were traced to the possession of the prisoner and Schœn, and identified. Of this there can be no doubt. A part of the identical goods stolen from Mills are so found and bargained by the prisoner to be sold to Schofield. Of this there can be no doubt. That prisoner and Schœn were "art and part" in the transaction, there is no doubt, and the rule is well settled, where two or more are shown to be in concert for a bad purpose, the acts and declarations of one in the accomplishment of the purpose, are the acts and declarations of all, and must be so held. The complicity with Schœn and the prisoner being established, then whatever Schœn said or did in regard to these goods, was properly used as evidence against the prisoner. To prove this complicity, nothing more was necessary than to show the meeting in the upper room of the house on Reuben street, and the agreement to meet afterwards at the corner of Peoria and Adams street. Honest dealers in jewelry, who have honestly acquired such property, do not deal with it in that way, and that it was a portion of the jewelry stolen from Mills, is beyond question. If these parties had come into the possession of it in a regular course of business, they would not fear to display it where all might see it, and seeing it, attracted by its beauty, might be induced to purchase it.

All the circumstances of the case, as detailed by the witnesses, and which we have searched the record to find, leaves not a doubt on our minds of the guilt of the prisoner. Were not the jury so impressed, the evidence of previous good character might possibly have availed for good, but the circumstances were so heavy as to outweigh all the suggestions which might spring up favorably from that consideration. Those who testified on this point had not, probably, heard of his passing under different names. That circumstance, unexplained, usually tells powerfully against a party accused of crime.

As to the instructions, we are of opinion the law of the case was properly given to the jury, and no well founded complaint can exist as to the manner in which they were disposed of by the court. The prisoner has had a fair trial, his guilt established to the satisfaction of the court and jury, and the law properly applied to the facts. This being so, we can but affirm the judgment, which is done.

*Judgment affirmed.*