## JAMES PRESTON v. THE STATE.

1. CHANGE OF VENUE. — Being indicted in M. County for murder, the accused applied for a change of venue on account of prejudice, and moved that the venue be changed to Clay County, whose court-house was the nearest to that of M. County; but the court, acting on its own knowledge of a like prejudice in Clay County, ordered the venue changed to Cooke County; and no exception to this order was then taken. When called for trial in the Cooke District Court, the accused pleaded to its jurisdiction, on the ground that the change to that county was illegal. *Held*, (1) that the exception to the order should have been taken in the court and at the time it was made; and (2) that, under the provisions of the law, the knowledge of the court of the prejudice in Clay County authorized the change to Cooke County, without proof of such prejudice.

2. SECOND CONTINUANCE. — Applying for a second continuance for want of absent witnesses, the accused fully complied with the requirements of the statute, showing the materiality of their testimony and diligent efforts by repeated attachments to enforce their attendance, and stating that the proper officers had wholly failed to execute and return any of the writs. No counter-showing was made. *Held*, error to overrule the application and force the accused to trial.

8. EVIDENCE. — Appellant and one K. were jointly indicted, but separately tried, for murder. On appellant's trial the State was allowed, despite his objection, to prove certain threats which, in his absence and some weeks before the murder, were made by K. against the deceased. The evidence to inculpate the appellant consisted of circumstances contemporaneous with

the commission of the murder, and there was no proof of complicity between appellant and K. at the time the threats were made. *Held*, that the threats were not competent or proper evidence against the appellant, for any purpose.

4. Error in Capital Cases. — A capital conviction must be set aside on appeal if, over objection by the accused, illegal evidence was admitted against him and he duly reserved exceptions. Such error is presumed to have been to his prejudice, and such a conviction cannot be sustained by the sufficiency of the legal evidence.

Appeal from the District Court of Cooke. Tried below before the Hon. J. A. Carroll.

In this record we have another edition of the history of the assassination of William England, his wife, and two of her children, in the county of Montague, on the night of August 26, 1876.

In volume 3 of these Reports, page 169, will be found the case of A. K. Taylor, who was indicted and convicted as one of the assassins; and in that case is given a detail of the evidence so full, and in the main so concordant with that in the present record, that there is no occasion to repeat it here. It is proper to add, however, that the present record contains explicit proof that very friendly relations existed between the appellant and the England family, and evidence strongly indicating prejudice against the appellant by the State's witness McGuire, who testified to expressions of the appellant inimical to them.

In volume 3, at page 348, a report is given of the case of Ben Krebs, appealed from a conviction had upon an indictment which charged him and the present appellant, James Preston, with the murder of William England. The trial of Preston, from which the present appeal is taken, was not upon that indictment, but upon one which charges him and Krebs with the murder of Mrs. England. In the opinion will be found such matters as have special pertinency to the rulings made.

*Grigsby & Willis, D. A. Williams,* and *Hurt & Smith,* for the appellant. The appellant, James Preston, and Ben Krebs were indicted by the grand jury of Montague County for the murder of Selina England. The indictment was filed in court October 31, 1876. On the same day a special *venire* was ordered, and the case set for trial November 3, 1876. A severance was asked and granted, and on November 9th the case was continued as to Preston. At the June term, 1877, of the District Court of Montague County, the case was called for final disposition, and after the State had announced ready for trial, defendant, Preston, filed his application for change of venue, which was supported by the affidavits of nine citizens of Montague County. The change of venue was asked under article 527 of the Code of Criminal Procedure. The defendant requested that the venue be changed to Clay County, the court-house of which is some seven miles nearer the court-house of Montague County than the court-house of any other adjoining county. The court granted the motion, but instead of sending the case to Henrietta, the county-seat of Clay, he ordered it sent to Gainesville, the county-seat of Cooke, County.

This, we maintain, the court had no legal right to do under the law. Article 530 of the Code of Criminal Procedure provides: "Upon the grant of a change of venue, the criminal cause shall be removed to some adjoining county the court-house of which is nearest to the court-house of the county where the prosecution is pending, unless it be made to appear in the application that such nearest county is subject to some objection sufficient to authorize a change of venue in the first instance."

Article 531 of the Code of Criminal Procedure provides: "If it be shown in the application for a change of venue, or otherwise, that all the counties adjoining that in which the prosecution is pending are subject to some valid objec-

tion, the cause may be removed to such county as the court may think proper."

It cannot be maintained that the act of 1876, providing for the change of venue by the State in criminal cases (Acts 1876, p. 274), repeals or changes the law governing changes of venue upon the application of the defendant. By reference to section 3 of said act it will be seen that special reference is made to the articles of the Code of Criminal Procedure above quoted, as the only law governing changes of venue on the application of the accused. In this case the record does not show that the ruling of the court was objected to at the time the order was made changing the venue to Cooke County; but when the cause was called for trial at the July term, 1877, of the District Court of Cooke County, the defendant, Preston, filed his sworn plea to the jurisdiction of the court, on the ground that the venue should have been changed to Clay, instead of Cooke, County; which plea was by the court overruled, and a bill of exceptions taken.

This ruling of the court we assign as error. It was the defendant's right to be tried where the cause of action originated, unless the judge, under the act of 1876, believed that a trial alike fair and impartial to the State and to the accused could not be had in the county where the cause was pending; when the law not only gives him the power, but makes it his duty, to order the venue changed, upon his own motion, to any county in his own, or in an adjoining, district. Or unless the county or district attorney, under the act of 1876, shall file a written application, representing to the court that, by reason of existing combinations or influences in favor of accused, or on account of the lawless condition of affairs in the county where the prosecution is pending, a fair and impartial trial cannot be had, etc.; in which case the court may change the venue to

any county in his own, or in an adjoining, district. Those provisions are the only ones giving the court power to change the venue in a criminal cause without the consent of the accused.

The only remaining method provided by law for changing the venue is upon the application of the defendant, under the Code of Criminal Procedure, already cited. Most certainly it cannot be said the court who tried this cause believed that a trial alike fair and impartial to the State and to the accused could not be had in Montague County, because the court did not, upon his own motion, order a change of venue, as it was his duty to have done if he believed either the State or the defendant could not have a fair and impartial trial in said county.

Under article 530, above cited, there is no discretion lodged in the court, and if he change the venue at all, it must go to the county the court-house of which is nearest that where the cause is pending, unless it appear in the application that such county has some objection sufficient to authorize a change of venue in the first instance. Such does not appear in defendant's application, and, hence, the court could only grant the change, if at all, to Clay County. Article 531, already cited, simply provides that when it appears in the application, or otherwise, that all the counties adjoining that in which the prosecution is pending are subject to some valid objection, the court may then exercise its discretion and send the case to such county as he may think proper. But in this case it was not shown in the application, or otherwise, that all the counties adjoining Montague were subject to some valid objection, and, hence, the court had no discretion whatever. We admit that it was within the court's discretion whether the venue should be changed at all, but when once exercised, and the venue changed, it must be done according to law. Const., art. 3, sec. 45.

[The very able argument of these counsel discusses all the legal aspects of the case, and concludes with a trenchant review of the evidence, but is necessarily too elaborate for full insertion. — REPORTERS.]

*George McCormick,* Assistant Attorney-General, for the State.

ECTOR, P. J.  The appellant, James Preston, and Ben Krebs were jointly indicted in the District Court of Montague County for the murder of Selina England.  The indictment was filed in court on October 31, 1876, and the murder is alleged to have been committed on August 26th of the same year.

There was a severance granted to the defendants by the District Court of Montague County, and on November 9th the case was continued as to Preston.  At the June term, 1877, of said court Preston filed an application for a change of venue, which was supported by the affidavits of nine citizens of Montague County.  The application for a change of venue was made under the first subdivision of article 527 of the Code of Criminal Procedure, to wit, that there exists in the county of Montague so great a prejudice against him that he cannot obtain a fair trial.  The defendant requested, in his motion for a change of venue, that the case be removed to Clay County, the court-house of which, he says, is nearer to the court-house of Montague County than is the court-house of any other adjoining county.  Upon the hearing of the application the court changed the venue to Cooke County.  The record does not show that the defendant, at the time the order of the court was made removing the case to Cooke County, interposed any objection to it.

When the case was called for trial at the July term, 1877, of the District Court of Cooke County, the defendant filed

his sworn plea to the jurisdiction of the court, on the ground that the venue should have been changed to Clay County, instead of Cooke County. This plea to the jurisdiction was overruled, to which ruling defendant excepted. One of the averments in this plea to the jurisdiction is that "the court granted a change of venue to this defendant upon the court's own motion." In signing the bill of exceptions tendered by the defendant, the presiding judge gives as one of the reasons why he changed the venue to Cooke, and not to Clay, County, as prayed for in defendant's application, that it was because "the court was satisfied there was equally as much prejudice in Clay County against defendant as in Montague County, from the fact that the court had heard a general expression from the citizens of Clay County."

On the trial of the cause the jury found the defendant guilty of murder in the first degree, and assessed his punishment at death.

The first question to be determined is, Did the District Court commit an error in removing the cause to Cooke County?

Article 530 of the Code of Criminal Procedure provides: "Upon the grant of a change of venue, the criminal cause shall be removed to some adjoining county the court-house of which is nearest to the court where the prosecution is pending, unless it be made to appear in the application that such nearest county is subject to some objection sufficient to authorize a change of venue in the first instance."

Article 531 provides: "If it be shown in the application for a change of venue, or otherwise, that all the counties adjoining that in which the prosecution is pending are subject to some valid objection, the cause may be removed to such county as the court may think proper."

The act of 1876 (Gen. Laws, 274, sec. 1) provides

"that whenever, in any case of felony, the district judge presiding shall be satisfied that a trial alike fair and impartial to the accused and to the State cannot, from any cause, be had in the county in which the cause is pending, he may, upon his own motion, order a change of venue to any county in his own or in an adjoining district, stating in his order the grounds for such change of venue."

After a careful examination of the statute we are satisfied that the court did not err in declining to remove the cause to Clay County. If it was known to the court that the same objection existed in Clay County as in Montague, it did not require further proof of that fact, but the court would be authorized to change the venue to some county adjoining Montague not subject to any valid objection.

And, again, the objection to the action of the court in changing the venue comes too late in this instance. The record affirmatively shows that the District Court of Cooke County had jurisdiction to try the case, and, as before stated, it does not appear that any objection was interposed by the defendant when the order under consideration was made.

The next point which is assigned as error that we propose to consider is "that the court erred in overruling defendant's motion for a continuance." The defendant filed a motion for a continuance on July 9, 1877, which was overruled by the court. Defendant saved a bill of exceptions to this action of the court. As a part of this bill of exceptions we find the following : " The court attaches to this bill the first application for continuance, filed on the 9th day of November, 1876, in this cause, in the District Court of Montague County, upon which a continuance was granted, for the purpose of explaining the ruling of the court as shown by this bill." We are at a loss to know what explanation of the ruling of the court this former affidavit for a continuance can afford, unless it be that while the court

admitted the relevancy of the evidence of the absent witnesses, it was done to show that due diligence had not been used by defendant to procure the attendance of these witnesses, or that, taken together, they do not show any probability of ever securing their attendance, in the event the case should be continued.

The application comes fully up to all the requirements of the statute in a second application for a continuance. Not a witness named in the first is included in the second affidavit.

The evidence in the statement of facts shows that on . the night of August 26, 1876, William England, Susie Taylor, and Isaiah D. Taylor, his step-children, were murdered, and Selina England was mortally wounded, by three assassins. Mrs. England died on the next day. The evidence upon which the prosecution relied to connect Preston with the commission of the offense is entirely circumstantial. Immediately after the murder of her husband and her two children, Mrs. England, mortally wounded, fled to the house of John Music and wife, and related all the circumstances concerning the killing. The facts were then fresh in her mind, and she had not been questioned and cross-questioned.

Defendant sets forth fully what he expects to prove by said Music and wife, as follows : " That at the time of the alleged killing of William England, Susie Taylor, and Isaiah D. Taylor, and the fatal wounding of said Mrs. Selina England, the said named witnesses resided in the county of Montague, within one half-mile of where said killing is alleged to have occurred ; and that, within less than one hour after the same is said to have occurred, the said Selina England came to the house of said witnesses and stated that she had been shot and her family all killed, and that the wound she had received would kill her. That the said Selina England, while so believing she was going to die, related to said witnesses how she received said wound, and who the ·

parties were that inflicted it and killed her family, so far as she knew. That she then stated to said witnesses that she knew James Preston was not one of the parties who did the killing and wounding of herself and family. Affiant further expects to prove by said witnesses that, during the same statement made by said Selina England, she also stated that Mr. Preston had always been friendly towards herself and family, and that there had never been any difficulty or hard feeling between them. Affiant further states that he can prove by said witnesses that the first time his name was ever mentioned by Mrs. England in connection with said alleged killing was simply done to indicate the size of one of the men who participated in said killing; that Mrs. England stated to said witnesses who one of the parties was (which was not this affiant), and then stated that she did not know who the others were, but that one of the men was an oldish-like man, about the size of Mr. Preston; and that said witnesses then asked Mrs. England if one of the parties who did the killing was Mr. Preston, and she said, ' No.' * * * Affiant further states that he can prove by said witnesses that during the time, or about the close of said statement so made by the said Mrs. England to said witnesses, Harvey Taylor, a son of Mrs. England and a brother of Susie and Isaiah D. Taylor, and step-son of William England, the parties who were killed, came into the house of said witnesses and stated that he was lying on the porch of the house where the killing was done, at the time the parties who did the killing came to the house, and said one of the parties who did the killing was Bill Taylor, and one of the others looked like Mr. Music.''

Affiant testified that these witnesses, Music and wife, now live in Jack County, Texas. The motion for continuance states that three writs of attachment, on the application of defendant, were issued for John Music and wife — one in February, 1877; one about two months before the June

term of the District Court of Montague County; and the third when the venue was changed to Cooke County. That each of said attachments was properly stamped and directed to the sheriff of Jack County, and duly mailed to said sheriff.

This application contained the names of other absent witnesses whose testimony it states is material for the defense, giving its materiality and the steps taken to procure their attendance at the trial, and that defendant had procured from one to three attachments for each of them, and had duly mailed the same, properly addressed and stamped, to the sheriffs in the respective counties where the witnesses reside, or had placed the same in the hands of the sheriff of the proper county, naming it; and that not a single one of these attachments was returned, or, if returned, they could not be found, etc. The names of the absent witnesses, the facts expected to be proved by them, and their residence, are all given, and the places of their residence. An examination of the application will show the materiality of the testimony of the absent witnesses, if they would swear to the facts therein stated.

So far as the record speaks, no effort was made to show that the attendance of these absent witnesses could not be secured by the next term of the District Court of Cooke County, or that the proper diligence had not been used by the defendant to procure their attendance at the July term of the court, when the case was tried.

The defendant should not be forced to trial without the evidence which he states under oath he can prove by the witnesses named, all of whom he alleges reside in the jurisdiction of the court, and most of them in counties not remote from Cooke, because the officers of the law fail to do their duty. County officers may have some explanation for this seeming neglect of duty on their part; if so, none is apparent on the record. Time is of but little consequence in an issue like this. If six months more were necessary to

enable the defendant to procure his witnesses, upon the showing made we think it should have been allowed him.

We will next consider the defendant's fifth assignment of error, to wit: " That the court erred in admitting irrelevant and incompetent evidence on the trial of the cause, as is shown by bills of exceptions."

On the trial of the cause the county attorney, over the objections of the defendant, was allowed to prove by the witness W. G. Nix that, some two or three weeks before the killing of the England family, Ben Krebs said, in the hearing of the witness Nix, that he (Krebs) would kill him or them out, and that said Krebs was speaking of the England family; and by Albert Hammond that, some two or three weeks before the killing of the England family, he heard Ben Krebs make threats against said Englands, and say that he would kill them before they should swear him into the penitentiary; and by Jonathan Stroud that he heard Ben Krebs make threats against Isaiah D. Taylor before said killing occurred, and that he had heard Ben Krebs say that he would clean him (Taylor) up if he could get a chance. To all of which evidence the defendant objected, on the ground that he (Preston) was not present, and should not be held responsible for threats made by others. The prosecution was also allowed to prove by Harvey Taylor that, some time before the killing of the England family, Ben Krebs had a falling-out with the Englands, on account of the hogs of England getting into the field of Krebs, and that Krebs made certain threats against the Englands at the time; and by A. D. Matlock that, before and at the time of the killing, there was a case in the County Court of Montague County against Ben Krebs, in which the said Englands were witnesses. All of this evidence was admitted against Preston, over his objections.

We know no rule of law, and are unable to perceive any reason resting on principle or well-considered authority, to

sustain this ruling of the court. Threats made by Ben Krebs against the persons killed could not be introduced in evidence, for any purpose, against Preston unless it were shown that Preston was present when the threats were made, and sanctioned and indorsed them as his own; or unless the State proved a conspiracy between Krebs and Preston to kill the England family, and that the threats were made after the formation of the conspiracy and during the pendency of the criminal enterprise, and in furtherance of its objects.

Mr. Greenleaf, in his work on Evidence, volume 1, section 111, lays down the correct rule, to wit: " The same principles apply to the acts and declarations of one of a company of conspirators in regard to the common design as affecting his fellows. Here a foundation must first be laid by proof sufficient, in the opinion of the judge, to establish, *prima facie*, the fact of conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact. The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all; and is, therefore, original evidence against each of them. It makes no difference at what time any one entered into the conspiracy. Every one who does enter into a common purpose or design is generally deemed, in law, a party to every act which has before been done by the others, and to every act which may afterwards be done by any of the others, in furtherance of such common design. Sometimes, for the sake of convenience, the acts or declarations of one are admitted in evidence before sufficient proof is given of the conspiracy, the prosecutor undertaking to furnish such proof in a subsequent stage of the cause. But this rests in the discretion of the judge, and is not permitted

except under particular and urgent circumstances, lest the jury should be misled to infer the fact itself of the conspiracy from the declarations of strangers. And here, also, care must be taken that the acts and declarations thus admitted be those only which were made and done during the pendency of the criminal enterprise, and in furtherance of its objects. If they took place at a subsequent period, and are, therefore, merely narrative of past occurrences, they are, as we have just seen, to be rejected."

Mr. Roscoe says: "After the existence of a conspiracy is established, and the particular defendants have been proved to have been parties to it, the acts of the conspirators may, in all cases, be given in evidence against them, if done in furtherance of the common objects of the conspiracy, as, also, may letters written, and declarations made, by the conspirators, if they are part of the *res gestæ* of the conspiracy, and not mere admissions." Roscoe's Cr. Ev. 387. See, also, 1 East P. C. 9, sec. 38.

In the case of *Barron* v. *The People*, 73 Ill. 256, Barron and Schoen had been jointly indicted, the indictment charging them in one count with larceny, and in the second count with receiving stolen property, knowing it to have been stolen. The Supreme Court of Illinois says: " That the prisoner and Schoen were ' art and part ' in the transaction, there is no doubt, and the rule is well settled, where two or more are shown to be in concert for a bad purpose, the acts and declarations of one in the accomplishment of the purpose are the acts and declarations of all, and must be so held."

In the case of *The People* v. *Moore*, 45 Cal. 19, the defendant was jointly indicted with Williams and Doyle for robbery. The declarations of Williams and Doyle, made in the absence of the defendant, were allowed to be proved, over the objection of the defendant. The Supreme Court of California says: " It is clear that the testimony quoted was not admissible for any purpose, and it is impossible to

conceive upon what theory it was offered or received. It was never competent to use as evidence, against one on trial for an alleged crime, the statements of an accomplice not given as testimony in the case, nor made in the presence of defendant, nor during the pendency of the criminal enterprise, and in furtherance of its objects. To hold such testimony admissible would be to ignore the rules of evidence settled, and everywhere recognized, from the earliest times."

The leading case in this state upon the admissibility of such evidence is *Wright* v. *The State*, 43 Texas, 170. This cause was reversed mainly upon the grounds that the court below permitted the State to prove that quarreling and ill-feeling existed between the deceased and other defendants who were also indicted for the killing. The decision, as is said by the learned counsel of defendant, in their able brief, is certainly founded upon principles of justice and reason, and sustained by the decisions of the different courts of the Union where the question has been adjudicated. *Patton* v. *The State*, 6 Ohio, 467 ; *The Commonwealth* v. *Crowninshield*, 10 Pick. 497 ; 2 Paige, 484 ; *The State* v. *Perry*, 16 La. An. 44 ; *United States* v. *Gooding*, 12 Wheat. 460 ; *American Fur Co.* v. *United States*, 2 Pet. 358.

It matters not for what purpose the threats and declarations of Krebs, or the state of his feelings towards the England family, were offered against the defendant, it was improper evidence, and the objections to it should have been sustained. When, in a case of this character, improper evidence is admitted over objections, and a bill of exceptions taken to the ruling of the court, we cannot look to the whole case to determine whether there is other testimony sufficient to establish defendant's guilt, or whether the verdict of the jury was not influenced by the illegal evidence.

The theory of the prosecution is that Ben Krebs, James

Preston, and A. K. Taylor, a step-son of Ben Krebs, are the persons who murdered the England family, and who were tracked from the place of the killing on the next morning. The story of that terrible tragedy, as detailed in the dying declarations of Mrs. Selina England, satisfies us that, on the trial of this defendant, the threats and declarations of Ben Krebs should not have been allowed to go to the jury, to show a motive on the part of Krebs to commit the murder, or to corroborate her testimony as to him. The testimony on the part of the State, as given in the dying declarations of Mrs. England, shows that she recognized Ben Krebs as the one of the murderers who shot her, and that she said " the man she saw cutting her husband's throat was either James Preston or a Dutchman who stopped there the evening before to get a drink of water, and who inquired the way to Ben Krebs.' " This proves that she did not have a definite conclusion in her mind as to who the man was; that the image of James Preston was not fixed in her mind as the man she saw cutting her husband's throat.

We deem it unnecessary to notice the other assignments of error. We have given the record a careful and patient consideration. We believe that the court erred in overruling defendant's application for a continuance, and in permitting the threats of Ben Krebs against the England family to go to the jury, over the objections of the defendant; and for these errors the judgment must be reversed.

In a capital trial, if error intervenes, it must be assumed to be injurious to the prisoner, and he is entitled to a reversal of the judgment. The court has no power to affirm the judgment because they are persuaded that upon the merits the judgment was right. *The People* v. *Williams,* 18 Cal. 187.

We know how important it is that the criminal laws of the state should be firmly executed by the courts; that the

certainty of punishment for their violation is the only safe protection for society; and that when the public authorities charged with the performance of this duty fail to perform it, those who are injured, or their friends, will seek to redress their wrongs by taking the law in their own hands, instead of appealing to the legal tribunals of the country.

At the same time, before a defendant is put to death the law demands that he should have a fair and impartial trial, and be legally convicted. If he has been deprived of these sacred and inestimable rights and privileges, the verdict must be set aside and a new trial be granted. In the language of an eminent and just judge, "God forbid that the prisoner should be sent to pray of the mercy of the executive a reprieve for an offense of which he has not been legally convicted."

The judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*