MICHAEL C. JENNINGS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 20, 1901.*

1. MURDER—*what evidence will sustain conviction.* Conviction for murder is sustained by proof that the accused was the aggressor in the affray, into which he entered armed with a deadly weapon; that he fired the fatal shot intentionally, never at any time in good faith declining further combat; that he did not fire the shot under the influence of real fear of great personal injury, and that although he fired in the heat of passion, he did so without provocation sufficient to excite ungovernable anger.

2. APPEALS AND ERRORS—*harmless admission of incompetent testimony will not reverse.* If competent proof clearly justifies the verdict in a criminal case, the fact that incompetent testimony was admitted is not necessarily ground for reversal, if it appears such testimony could not reasonably have affected the result.

Special concurrence by CARTER, CARTWRIGHT and HAND, JJ.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

JAMES TODD, for plaintiff in error.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, and BEN. M. SMITH, of counsel,) for the People.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

On a trial before the court and a jury in the criminal court of Cook county the plaintiff in error was convicted of the crime of murder in the killing of one Thomas H. Levers, and he has prosecuted this writ of error to reverse the judgment of conviction. He was sentenced to be confined in the penitentiary for the term of twenty-five years.

The said Levers was killed by a pistol shot fired by the plaintiff in error. The defense sought to be established was that of self-defense. But a brief reference to the testimony is required in order to demonstrate we can not interfere on the ground the verdict is not supported by the evidence.

The plaintiff in error, a physician in the city of Chicago, rented the basement at No. 2210 Wabash avenue for a laboratory, a window whereof opened on the alley at the side of the building. The deceased lived in the second story of the building across the alley opposite said window, and had long been accustomed to drive his horse, attached to a light wagon, into the alley at the noon hour and feed his horse near this window. On the day in question the deceased drove into the alley, hitched the horse at the accustomed place and fed him there. Plaintiff in error objected and demanded that the horse be removed. The deceased insisted the horse should remain in the alley. Angry words followed, and according to the testimony of two or more witnesses the plaintiff in error threatened the life of the deceased. The parties separated, the deceased going to his rooms on the second

189—21

floor of the building adjoining the alley and the plaintiff
in error to the office of the agent in charge of the build-
ing in which he had his laboratory, and then to his own
office in a building a short distance from that in which
he had his laboratory. Within a few minutes the plain-
tiff in error returned, entered the alley, untied the horse,
and led him, with the wagon, into the street. At this
time deceased came down to the street from his rooms,
seized the bridle and undertook to force the horse and
wagon back into the alley. Plaintiff in error also seized
the reins of the bridle or the driving lines of the harness,
and resisted to the extent of his physical strength the
attempted return of the horse and wagon into the alley.
He also drew a revolver and threatened to shoot the de-
ceased if he did not desist from his efforts to return the
horse into the alley. The deceased, however, succeeded
in backing the horse and wagon to the position he had
left them in the alley notwithstanding the efforts of the
plaintiff in error to return the horse and wagon to the
street. About this time the plaintiff in error drew a
revolver, a shot was fired and the wound inflicted from
which the death of Levers ensued. Levers was unarmed.

The plaintiff in error testified that during the struggle
in the alley the deceased struck him with his fist; that
he gave back, but that deceased followed and repeated
the blow; that he drew his revolver, ordered Levers to
stand back, and intended to disable him by shooting him
in the leg; that Levers attempted to get the revolver,
and that the weapon was fired either unintentionally, or
at least without intention on his (plaintiff in error's) part
to shoot the deceased in any other part of his body than
in his leg. There was also sworn testimony tending to
show that while the parties were pushing and pulling
the horse Levers struck or struck at the plaintiff in error
with his clenched fist, and that plaintiff in error ordered
Levers to "stand back" three times before the shot was
fired, and that the shot was fired by the plaintiff in error

to protect himself against the assaults of Levers.   The testimony on the part of the State tended to show that the deceased did not strike or attempt to strike plaintiff in error, but only pushed the plaintiff in error in order to break his hold on the bridle and release the horse, and that when the shot was fired Levers was endeavoring to prevent the plaintiff in error from firing the pistol.   The deceased was unarmed, and when shot was in the alley near the mouth thereof, as was also the plaintiff in error, both having moved in the struggle from the street, where they were when it began.

There is no reason the findings of the jury that the shot was fired intentionally and not in self-defense should be rejected by this court.  Twenty-nine instructions were given on behalf of the plaintiff in error.   The right of self-defense, even to the taking of human life, though the danger should prove only apparent and not real, and though the accused be the assailant, if he afterward ceased to fight and in good faith withdrew from the conflict, was so distinctly announced and so frequently reiterated in the instructions that it is idle to contend the jury could have misapprehended the law of self-defense or any phase thereof.  We have carefully read and considered all the testimony.  Our conclusion from the evidence is, that, according to the plaintiff in error every reasonable doubt, the jury were warranted in entertaining the belief the plaintiff in error was the aggressor in the affray; that he entered upon the difficulty armed with a deadly weapon; that he fired the shot intentionally; that he did not at any time in good faith decline further conflict before firing the fatal shot; that he did not fire the shot under the influence of honest and real fear that he was in danger of receiving any great personal injury, and though upon heat of passion, yet without provocation sufficient to excite ungovernable anger, and from the prompting of unreasonable rage and in a spirit of revenge.   The verdict, therefore, was fully justified by the proof.

We have considered the contention of counsel for the plaintiff in error that the judgment of conviction should be reversed because of the alleged erroneous rulings of the court as to the admissibility of certain testimony. The plaintiff in error produced testimony tending to show he enjoyed a good reputation as a peaceable and law-abiding citizen.   One A. R. Porter, who, together with others, was introduced as a witness for the People, in rebuttal of such proof of good character testified in his examination in chief that such general reputation of the plaintiff in error was bad.   On cross-examination counsel for plaintiff in error asked the witness the following queston: "Were you arrested by the doctor—on complaint of the doctor—on the charge of robbery?" to which the witness answered, "Yes, sir."   The court, over the objection of the plaintiff in error, permitted the witness to state that he was a justice of the peace and in that capacity issued two criminal warrants against plaintiff in error, and that the plaintiff in error was brought before the witness, as such justice, and tried and fined, and also fined for contempt of court in the course of the hearing, and that he paid the fines to the witness in his capacity as a justice of the peace, and that the plaintiff in error caused the witness to be arrested on the following day on a charge that the money so paid as fines had been obtained from him by the witness by robbery.   The witness, in the course of this explanation, mentioned, in part, the facts of the criminal charges for which the plaintiff in error was arrested and fined by him, otherwise the explanation was not improper.   It is clear to our minds the verdict should and would have been the same had this witness confined his explanation within proper limits.   We have frequently held, where, in a criminal case, the competent proof clearly justifies the verdict, the fact that incompetent testimony was admitted will not necessarily authorize a reversal, if it appears such incompetent testimony could not reasonably

have affected the result. *Jackson* v. *People*, 126 Ill. 139; *Ochs* v. *People*, 124 id. 399.

The State's attorney was permitted, upon cross-examination, to ask several witnesses who had testified that the plaintiff in error enjoyed a good general reputation in his neighborhood as a peaceable and law-abiding man, if they had not heard the plaintiff in error had committed certain specified criminal offenses. Under the rule announced in *Aiken* v. *People*, 183 Ill. 215, it was error to permit those questions to be asked, but the witnesses, in each instance, denied they had ever heard anything said about any of such charges of alleged wrongdoing. The result of the answers thereto was favorable, rather than prejudicial, to the cause of the plaintiff in error.

It was not error to give instruction No. 6 in behalf of the People. It is a *verbatim* copy of instruction No. 3 approved by this court in *Hirschman* v. *People*, 101 Ill. 568, save that the words "and during the trial" are omitted. This omission rendered the instruction only the more favorable to the plaintiff in error.

Instructions Nos. 9 and 10, asked by plaintiff in error and refused, but advised the jury the defendant (plaintiff in error) was entitled to the benefit of any reasonable doubt arising out of the evidence. Instructions Nos. 15, 17, 18, 19, 20, 23, 25, 26, 27, 28, 29 and 30, given at the request of the plaintiff in error, stated fully, clearly and with unnecessary reiteration the doctrine sought to be announced again by the refused instructions Nos. 9 and 10.

The guilt of the defendant was well established, his conviction justly declared, and nothing in the record requires interference on our part.

The judgment is affirmed.          *Judgment affirmed.*

CARTER, CARTWRIGHT and HAND, JJ.: We concur in affirming the judgment in this case, but not in the doctrine of the *Aiken case* respecting the cross-examination of witnesses as to reputation.