## Chicago & E. I. R. R. Co. and Chicago & W. I. R. R. Co. v. George Huston, Adm., etc.

1. WITNESS—*Importance of His Testimony Not a Sufficient Reason for Discrediting Him.*—The fact that the testimony of a witness is of great importance to the successful party's side of the case, is not a sufficient reason for discrediting him as a witness.

2. ORDINARY CARE—*May Be Inferred from Circumstances.*—It is not incumbent upon an administrator suing for the death of his intestate, to establish ordinary care on the part of such intestate, by direct and positive testimony; such care may be inferred from all the circumstances shown to exist immediately prior to and at the time of the injury; and in determining the question, the jury may properly take into con-

sideration the instinct prompting to the preservation of life and the avoidance of danger.

3. EVIDENCE—*As to the Intention of a Party Killed at a Railroad Station to Take the Train as a Passenger.*—In an action by an administrator of a person killed at a railroad station, circumstances tending to show that the deceased intended to take the train as a passenger and that he was provided with money to pay his fare, are properly admitted in evidence.

4. INSTRUCTIONS—*Mingling of Different Theories of Defense.*—The mingling of the principles of law applicable to different theories of defense in an instruction is confusing and can hardly fail to mislead the jury.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH. Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed June 4, 1901. Rehearing denied.

W. H. LYFORD, S. A. LYNDE and K. M. LANDIS, attorneys for appellants; SOL ROSENBLATT, of counsel.

THORNTON & CHANCELLOR, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

Appellee's intestate was struck and killed by a locomotive of the appellant, Chicago & Eastern Illinois Railroad Company, on the evening of May 11, 1895, at or near the Seventy-second street suburban station of said company, in Chicago, and this appeal questions the judgment for $3,600 recovered by appellee in his suit for damages occasioned by the death.

The locomotive was " running light "—that is, without coaches attached—it being on its return northward to the roundhouse at Thirty-third street, from a more remote station to which it had hauled a train and left it over night, and on such return trip it was intended to run past the station where the accident happened and not stop there.

Two young men, or boys, of whom the intestate was one, were struck by the locomotive at practically the same time. They had been at a ball ground about five blocks east and south of the station in question, and the evidence tended

to show that they purposed to take a suburban passenger train going south from that station.

At the station in question there were two parallel tracks used for passenger traffic exclusively—the easternmost one for north-bound passengers, and the west one for those south-bound. A platform, 109 feet long, extended south from Seventy-second street along the east side of the east-ernmost or north-bound track, and another platform of the same length extended between the two tracks. These plat-forms were of plank laid on a level with the tops of the rails. The spaces between the rails were filled with broken stone. The bodies of the boys, when picked up after being struck, lay north of the south ends of these platforms—one of them, that of appellee's intestate, a little to the east of the east platform, and the other a little to the west of the west or south-bound track and north of the intestate. The hat of one of the boys, which one does not appear, was found on the west platform between the tracks, about four and a half feet north of its south end.

There was considerable difference in opinion between the witnesses as to the position of the intestate's body with ref-erence to the east platform considered lengthwise, varying from twenty-five to fifty feet north of its south end.

The principal dispute over the material facts of the case, is as to whether the young men were walking to the station on the railroad tracks—and were trespassers—at the time they were overtaken by the locomotive, or had previously arrived at the station and were in the act of crossing the track on which the offending locomotive was running, in order to take the south-bound train from the platform be-tween the tracks. The evidence on this subject was very conflicting. The engineer of the locomotive testified that when he first saw the boys they were walking on the track about fifteen feet south of the south end of the platform, and about 125 or 130 feet south of the south sidewalk of Seventy-second street. On cross-examination he testified that when he first saw them they were about 100 feet from the front of the engine and about 150 feet south of Seventy-

second street.   He also testified on further cross-examination that, in his opinion, he testified at the coroner's inquest the boys were seventy-five or one hundred feet south of Seventy-second street; but if he then testified they were fifty feet south of the south line of Seventy-second street he supposed he was right.

The fireman of the locomotive testified that when he first saw the boys the engine was probably 150 feet from them, and that they were struck forty or fifty feet south of the platform.   On cross-examination he said that at the coroner's inquest he testified the young men were about twenty feet from the engine, but thought he was then mistaken. These two witnesses seem to be the only persons who saw the accident.

The only other person who claims to have seen the boys at or near the railroad prior to the accident, was one Himebaugh, a witness for the appellee, who had, just before the accident, crossed, going easterly, the tracks on Seventy-second street, and saw, as he testified, two persons and no more, standing on the north-bound platform (east of the tracks) about half way the length of the platform.   He did not see the accident, but his attention was almost immediately attracted by noises from the locomotive indicative of an attempt to stop it as quickly as possible.   The locomotive immediately rushed over the crossing and past him at a high rate of speed, said by him to be fifty or fifty-five miles an hour, and he walked right back and saw the bodies of the two boys where they were lying.   According to this witness, almost instantly after the locomotive passed the south-bound dummy came in.   This dummy was the train which, according to the theory of the appellee, the boys were intending to take.   In order to reach the platform between the two passenger tracks at which the dummy stopped and where passengers boarded it, it was necessary for intending passengers, who were waiting on the platform where the witness located the boys as standing, to cross the intervening north-bound track on which the locomotive that struck the boys was traveling.

The testimony of this witness, Himebaugh, with reference especially to the time of the incoming of the south-bound dummy, is contradicted by several witnesses on both sides, and the whole of his testimony is attacked with much vigor by appellants' counsel. We have therefore examined it critically, but we fail to discover wherein his testimony was not entitled to weight and the fair judgment of the jury. So far as appears he is a reputable man and worthy of belief. He had worked on railroads fifteen or more years as engine repairer, switchman, brakeman and engineer, and his testimony shows him to be familiar with the speed and mode of operating engines and also with the locality of the accident.

It is true that his testimony was of great importance to appellee's side of the case, but that is not a sufficient reason for discrediting him as a witness. Nor is the fact that his testimony is contradicted in the respect we have mentioned, or as to the speed at which the locomotive was running, if the jury believed he was innocently mistaken in such respects. We think, moreover, that his testimony as to the situation of the boys on the platform, just before the locomotive came along, is measurably corroborated by the position of the boys' bodies when picked up, and that it is not absolutely at variance with some inferences to be drawn from the testimony of the engineer and fireman. The jury having given credit to his testimony and the trial judge having sanctioned the verdict, it would be going too far for us to hold it to be unworthy of belief. It was plainly a matter for the jury to determine, upon the consideration of all the evidence, whether the accident was the result of negligence by the appellant, and of due care by the intestate for his own safety, or not. It was not incumbent upon the appellee to establish such due care " by direct and positive testimony," but such due care might be inferred from all the circumstances shown to exist immediately prior to and at the time of the injury; and in determining such question the jury might properly take into consideration the instinct prompting to the preservation of

life and avoidance of danger. Cleveland, C., C. & St. Louis Ry. Co. v. Keenan, 190 Ill. 217.

Appellant was chargeable with the consequences of maintaining conditions about its passenger stations or platforms which rendered such an accident possible to waiting passengers.

We do not think there was any error committed by the court in admitting the evidence complained of. We think that all the circumstances testified concerning, tending to show that the intestate intended to take the south-bound dummy as a passenger, and that he was provided with money to pay his fare, were properly allowed in evidence. But if there were error in such respect, the result could scarcely have been affected by it, and a reversal should not be given because of it, in view of the other evidence justifying the verdict. Jennings v. People, 189 Ill. 320.

Appellants' offered instruction numbered 7 was properly refused, because, if for no other reason, of the mingling in it of the two theories of defense (a), that the intestate was walking along the tracks and was a trespasser, and (b) that he was walking across the tracks at the station in a negligent manner.

There is in the instruction a mingling of the principles of law applicable to the different theories that is confusing, and that could have hardly failed to mislead the jury.

The judgment must be affirmed, and it is so ordered.