PAUL BLEICH

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 18, 1907.*

1. MURDER—*law as to homicide by intoxicated person.* Where one who is voluntarily intoxicated commits a homicide under such circumstances as would have constituted murder by one not intoxicated, the intoxication is neither defense nor excuse.

2. SAME—*when instruction with respect to intoxication properly given.* Where the fact of the defendant's intoxication is in evidence as a necessary part of the case against him for murder, it is proper to give instructions correctly stating the law as respects the intoxication of one committing a crime, even though the defendant does not interpose his intoxication as a defense.

3. SAME—*a mistaken belief in appearances, caused by intoxication, is not a defense.* The belief in danger, such as justifies the killing of a person, must be such a belief as a reasonable person would have entertained under the circumstances and in view of the appearances, and if such belief arises only from the intoxicated condition of the person entertaining the same, it neither excuses his action nor reduces the grade of his offense.

4. SAME—*when killing cannot be justified under the plea of self-defense.* One who has killed another cannot justify his action under the plea of self-defense, where it would not have appeared to a reasonable person in a like situation with the defendant that he was in danger of great bodily harm or of losing his life.

5. SAME—*an instruction may state that facts constitute murder.* If the facts stated in an instruction necessarily constitute murder, it is proper for the instruction to state that they do constitute such offense in law, without any qualification as to manslaughter being inserted.

6. SAME—*when judgment of conviction will not be reversed.* A judgment of conviction which is fully sustained by the facts proven and justified by the law will not be reversed for slight or immaterial errors in instructions.

7. INSTRUCTIONS—*when ambiguity of instruction is not prejudicial.* An instruction informing the jury that they might find the defendant guilty of murder, or they might find him guilty of manslaughter if they found from all the evidence, beyond a reasonable doubt, that he was not guilty of murder, is not prejudicial as tending to place the burden on the defendant to prove he was not guilty

of murder, where other instructions clearly require the prosecution to prove, beyond a reasonable doubt, every material fact necessary to constitute such crime.

8. SAME—*when instruction as to the weighing of testimony is not harmful.* While the law raises no presumption as to whether a witness has testified truly or falsely, yet it is not harmful to give an instruction advising the jury to attribute misstatements of witnesses to other causes than an intention to commit perjury, where the instruction does not direct the jury to give credit to any particular witness or witnesses.

9. TRIAL—*a party must object to improper statements of opponent and obtain ruling.* To preserve for review alleged improper statements of counsel in his argument the opposing counsel must object thereto and obtain a ruling, and if he chooses to remain silent, under an arrangement with the court that his exceptions will save themselves without interrupting the argument, he will not be allowed in a court of review to take advantage of objectionable statements that may have been made.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE KERSTEN, Judge, presiding.

DANIEL L. CRUICE, and A. S. LANGILLE, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (JAMES J. BARBOUR, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Paul Bleich, plaintiff in error, having been indicted for the murder of John Engle, was tried in the criminal court of Cook county and found guilty by a jury and his punishment was fixed at thirty-three years in the penitentiary. The court overruled motions for a new trial and in arrest of judgment and sentenced him in accordance with the verdict.

The killing was proved and not denied, but it was claimed to be justifiable homicide because done in necessary

227—6

self-defense. The facts are as follows: The defendant was a teamster, twenty-two years of age, living with his father, mother and sister at 219 Orchard street, in the city of Chicago, opposite the saloon of Mathew Annen. His reputation for peace and quiet in the neighborhood was good. John Engle was a single man, about thirty-eight years of age, who was working for a butcher at 216 Orchard street, and he was also a peaceable, quiet citizen. On Sunday, September 17, 1905, defendant spent most of the day drinking, playing pool and shaking dice for drinks in Annen's saloon, which was open on that day in violation of law and in which numbers of people congregated. Towards evening he went home, and after having something to eat went back to the saloon and continued drinking and shaking dice and played a mouth harmonica. Some of the boys were dancing and singing and Mrs. Annen told him to stop playing,—that they were getting too noisy. Defendant's money was gone and he went home to get more. He did not obtain any, and his father told him he thought he had plenty of money. His mother asked him to stay away from the saloon, but he said he was going over there to enjoy himself for a while longer. The defendant was then intoxicated and appeared excited, and, as his father characterized it, like an insane man. His father, who was himself in the daily habit of drinking liquor, thinking that he already had too much, went across the street and notified the bar-tender not to sell any more to him. It was then about seven o'clock in the evening and was getting dark. The defendant left the house and started across the street with a loaded revolver in his hand. His mother ran after him and reached him about the center of the street. She took him by one arm and attempted to hold him and persuade him not to go to the saloon, but he pushed on, and his sister, who had gone to a dairy for milk and was coming along the street, saw him and his mother and ran to them, reaching them about as they got to the curbstone. The sister caught the defendant by the other arm,

and he pushed her and was trying to free himself from the restraint of his mother and sister and to get to the saloon, when John Engle, who was on the other side of the street, ran across, and, coming in front of defendant and between him and the saloon, either took hold of the hand which held the revolver or put his hands on the defendant and tried to assist the mother and sister in preventing him from going to the saloon. Defendant struggled to free himself and once or more cried out: "Let me alone! Let me go!" It is uncertain whether he put the revolver in his pocket at that time, but if so he drew it out and shot Engle twice, one bullet entering the neck under the chin and the other striking the breast-bone, and, being deflected, passed between the ribs, finally lodging at the left side of the back-bone.

There is a conflict in the evidence as to whether the shooting was done as they stood up or as they were falling down or when down. They both·fell down, and probably Engle fell on top of the defendant. A crowd immediately gathered, and the body of Engle was then lying on the back and the defendant was standing perhaps ten feet away, waving his revolver. The defendant was arrested, and told the policeman that he was drunk and did not remember much that happened. At the trial he testified that he was intoxicated at the time, but he thought that he pulled out the revolver and fired when they were falling down, and that Engle was choking him. He was clearly mistaken as to being choked, when he was crying out to be let alone so as to be heard at a considerable distance. There was no hostility between the parties and there was no attempt by Engle to do any injury to the defendant. All that Engle was doing was to aid the mother and sister in restraining defendant, and if defendant surmised that there was any intention to do him any bodily harm it was because of his own voluntary intoxication. If it were true that he had any such belief, it was because he misunderstood the conditions by reason of his intoxication, and the law is, that where one is volun-

tarily intoxicated and commits a homicide under such circumstances as would have constituted murder by one not intoxicated, the intoxication is neither defense nor excuse. But he did not entertain any such belief, as is clearly shown by his crying out: "Let me alone! Let me go!" He was trying to reach the saloon, and understood the situation well enough to know that his mother and sister and Engle were merely trying to prevent him from doing so. Engle had no unfriendly feeling or improper motive, and his action, if imprudent, did not result from any intention to assault the defendant or do him any bodily injury.

It is apparent that the facts proved not only justified the verdict of guilty, but that such verdict was the only one which the jury would have been justified in returning. There was no error in rulings on the admission or exclusion of evidence and none is claimed. All the facts bearing on the case were fairly presented to the jury, and the claim that the verdict was against the evidence is clearly unsound. The verdict was based on the facts and justified by the law, and if the same facts should be again presented to another jury no different result could be expected. Under such circumstances the judgment ought not to be reversed for slight or immaterial errors in giving instructions.

Objections are made to a great many of the instructions given at the instance of the prosecution and most of the objections are groundless, but it cannot be said that all the instructions are free from error. The first informed the jury that they might find defendant guilty of murder, or might find him guilty of manslaughter if they found from all the evidence, beyond a reasonable doubt, that he was not guilty of murder but was guilty of manslaughter, and it is criti- cised as requiring the jury to find from the evidence, beyond a reasonable doubt, that defendant was not guilty of murder. The instruction was ambiguous and not drawn with proper care, but the jury were informed in numerous instructions that to warrant a conviction of murder the prosecution

must prove, beyond a reasonable doubt, that the defendant unlawfully killed the deceased with malice aforethought, and that the burden was upon the prosecution to establish, beyond all reasonable doubt, every material fact necessary to constitute that crime. The purpose of this instruction was to permit a conviction for either murder or manslaughter, and in view of the other instructions it could not have misled the jury.

The tenth instruction advised the jury to endeavor to reconcile the testimony of the witnesses, if they could reasonably do so under the evidence, with the belief that they endeavored to tell the truth, and to attribute any differences, contradictions or omissions, if any existed, to mistake or misrecollection or lack of observation or lack of memory, rather than to a willful intention to swear falsely. The law raises no presumption that a witness has testified to the truth, (*Hauser* v. *People,* 210 Ill. 253,) but it never presumes willful and corrupt perjury. The objection made to this instruction is, that the jury would be induced by it to conclude that there was a mistake or faulty recollection, rather than perjury, in the case of some witnesses who, it is claimed, testified falsely. The court can scarcely commit error in refusing instructions designed to influence the jury in passing upon the credibility of witnesses, but this instruction did not direct the jury to give credit to any witness, and only advised them to attribute mis-statements to other causes than an intention to commit perjury. We do not see that it could have harmed the defendant.

The thirteenth, fourteenth, fifteenth and seventeenth instructions related to the subject of voluntary intoxication. The instructions contained correct statements of the law, and the objection to them is, that the defendant did not defend on the ground of drunkenness, but on the ground of self-defense. The court also refused to give an instruction asked by counsel for defendant, advising the jury that the question whether the defendant was intoxicated, or the de-

gree of his intoxication, was not in issue and should not be considered by the jury. Counsel insist that the jury should not have been advised as to the law on the question of drunkenness because the defendant did not attempt to excuse himself on that ground; but the fact that the defendant was intoxicated was in evidence as a necessary part of the case, and his intoxication being no defense, of course he could not interpose it as such. It was proper that the jury should be advised of the law on the subject. (*Miller* v. *People,* 216 Ill. 309.) The thirteenth and fourteenth instruc-.tions were given in the case of *Upstone* v. *People,* 109 Ill. 169, and it was said that the legal principle stated was sustained by the decisions of this court and the well settled doctrines of the common law..

The seventeenth instruction is further objected to on the ground that there was no evidence that the intoxication of defendant was of such a degree that he was unable to reason intelligently. He testified that he was intoxicated, and at the time stated that he was so far intoxicated that he did not know much that had happened. If his later conclusion that he considered himself in danger of great bodily harm or losing his life were to be credited, it would clearly appear that he misconceived the situation and surroundings on account of his intoxicated condition. Counsel further say as to this instruction, that if the defendant had an honest conviction of danger and acted on it he should not be punished. But that is not the law. The belief must be such as a reasonable person would have entertained under the circumstances and in view of the appearances. If a belief in the' necessity of killing Engle arose only from the intoxicated condition of defendant, it would neither excuse him nor reduce the grade of his offense.

The sixteenth instruction is subject to just criticism. It was a long, rambling, disconnected and involved statement concerning divers subjects and it expressed no clear or definite rule of law. The final conclusion of the instruction,

that if it would not have appeared to a reasonable person in a like situation with the defendant that he was in danger of great bodily harm or losing his life he would not be justified in the killing on the plea of self-defense was correct, and we do not think the judgment should be reversed on account of the instruction. It first stated correctly the law that an arrest may be made by a private person for a criminal offense committed or. attempted in his presence. It then referred the jury to the evidence to determine as to the intoxicated condition of defendant, his crossing the street with a loaded revolver and endeavoring to go into the saloon where other people were congregated, and the efforts of the mother and sister to restrain him, and advised the jury that if they believed, beyond a reasonable doubt, such facts existed, Engle had a right to believe that the defendant was about to commit a criminal offense; but the instruction, then abandoning the idea of an arrest, stated that Engle had a right to intercept the defendant and use all necessary force to restrain him from committing any such crime. After so stating that under the hypothesis of fact Engle had a right to believe that defendant was about to commit a criminal offense, the instruction then required the jury to believe from all the evidence, beyond a reasonable doubt, that Engle was justified in believing, from the conduct of defendant, that he was about to commit a criminal offense, and that in all Engle did he was acting in a reasonable manner in attempting to prevent the defendant from committing acts of violence. It finally concluded with the correct rule above stated as to self-defense. The only serious objection to matter contained in the instruction is, that under the facts stated Engle had a right to believe that defendant was about to commit a criminal offense, but immediately afterward it required the jury to find, beyond a reasonable doubt, that Engle was justified in such a belief. Engle was not attempting to arrest the defendant, but simply intervened to assist the mother and sister in preventing the defendant from going into the

saloon under circumstances giving rise to a belief that in-. jurious consequences would follow.

The thirty-seventh and fortieth instructions are objected to because they informed the jury that under the facts therein stated the killing would be murder, and it is contended that the jury should have been left free to determine that the homicide was either murder or manslaughter. Where an instruction does not state facts which necessarily constitute the crime of murder, and the homicide may be either murder or manslaughter, it is error to direct the jury to find the defendant guilty of murder; (*Panton* v. *People,* 114 Ill. 505; *Lynn* v. *People,* 170 id. 527;) but if the facts stated in the instruction constitute the crime of murder, it is proper to instruct the jury that they do consitute such an offense in the law. If the facts stated constitute the crime of murder the law requires a conviction for that offense. *Crowell* v. *People,* 190 Ill. 508; *Carle* v. *People,* 200 id. 494; *Kyle* v. *People,* 215 id. 250.

The court refused to give an instruction asked by counsel for defendant on the question of reasonable doubt, and it was properly refused, for the reason that the jury were already fully instructed on that subject.

A part of the closing argument of the assistant State's attorney is printed in the abstract, and much complaint is made of what he said. During the progress of the argument no objection was made to it by counsel for the defendant, but it appears that the counsel, without making any objection, asked the court if the exceptions to the argument would save themselves without interrupting the attorney, and the court answered, "Yes." We have never recognized a practice that will permit counsel to sit by without pointing out anything objectionable in an argument, under an arrangement that any irregularities or erroneous statements which may be afterward found may be taken advantage of in this court. Parties will not be compelled to go through a second trial merely that statements or arguments may not

be made which might have been prevented or corrected on the first trial. Objectionable statements may be thoughtlessly made which would be at once corrected if objected to, and if the proper bounds of argument are exceeded the court could restrain counsel and obviate the effect of what has been said. (*Clark* v. *People,* 224 Ill. 554.) The rule is well illustrated in this case. The assistant State's attorney did not agree with the law as enacted by the legislature and as administered by the courts, including the law of self-defense, the method of instructing juries and the extent to which judges are allowed to influence findings on questions of fact. It is to be presumed that when he so far forgot himself as to indulge in an attack upon the law which it was his duty to respect and assist in enforcing, and upon the courts and the administration of the law, a mere suggestion would have brought him to a realization that he had transgressed the limits of propriety. What he said was in extremely bad taste and was wholly uncalled for, but he did not propose to change the law or practice in this case or make any suggestion to the jury that they should do so. The court apparently did not deem it necessary to correct the statement that under our system of laws the judge trying a case is practically a dummy. Cases may occur where the court ought to intervene of his own motion, but in this case the attorney seems to have been willing that the jury should administer the law as it is, and in view of the evidence in the case and the undoubted guilt of the defendant we are convinced that the judgment ought not to be reversed.

The alleged newly discovered evidence was no ground for a new trial.

The judgment is affirmed.                 *Judgment affirmed.*