THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES S. NALL, Plaintiff in Error.

*Opinion filed October 26, 1909—Rehearing denied Dec. 8, 1909.*

1. CRIMINAL LAW—*extent to which grand jurors may testify—rule extends to other persons.* It is proper to prove by members of the grand jury that witnesses testified differently before that body than they did at the trial, but members of the grand jury cannot impeach their return of the indictment, nor can this be done by any other persons authorized by law to be present in the grand jury room.

2. SAME—*appearance of special attorney before grand jury is not a ground for quashing indictment.* The fact that one of the special attorneys for the People in a conspiracy case appeared before the grand jury which returned the indictment is not ground for quashing the indictment, nor is it error for the trial court to refuse to permit the answering of questions designed to show what such attorney testified to before the grand jury.

3. SAME—*rule as to requiring a more specific bill of particulars.* The requiring of a more specific bill of particulars to be furnished by the People is a matter resting in the sound discretion of the court, and a refusal to require one is not ground for reversal, where it does not appear that the defendant was in any way injured by such refusal.

4. SAME—*when motion to require People to make an election is improper.* Where the same grand jury has returned two indictments against the same persons, one for conspiracy to obtain money by false pretenses and the other for the confidence game, a motion to require the People to elect as to which indictment it shall prosecute is improper, even though the indictments may cover the same transaction.

5. SAME—*a person may by one act commit, in law, several offenses.* Even though an indictment for conspiracy to obtain money by false pretenses and an indictment for the confidence game may be based upon the same transaction, it does not necessarily follow that a conviction under the first indictment would be a bar to a prosecution under the other.

6. SAME—*when overruling a motion for continuance is proper.* Overruling a motion for continuance upon the ground of an absent witness is proper, where the affidavit setting forth what such witness would testify to does not set up facts but merely conclusions, which the witness could not properly have been allowed to swear to had he been present at the trial.

7. CONSPIRACY—*when an indictment need not set out means of carrying out conspiracy.* An indictment charging a conspiracy to do an unlawful act, such as to obtain money from a bank by false pretenses, need not set out the means by which the conspiracy was to be carried into effect.

8. SAME—*indictment may charge that a person since deceased was a conspirator.* Since two persons may be convicted of a conspiracy even though three are named in the indictment as conspirators, it is proper to charge in an indictment that defendants, with a named person "who is now deceased," conspired together.

9. SAME—*letter written before bank was started is admissible.* Where a conspiracy to obtain money from a bank by false pretenses is charged, the whole series of transactions leading up to the final consummation of the conspirators' purpose, both before and after the organization of the bank, may be shown; and the fact that a letter from one defendant to another, indicating their fraudulent purpose, was written before the bank had started in business does not render it inadmissible.

10. SAME—*the trial court has much discretion in admitting evidence in conspiracy case.* In a conspiracy prosecution the trial court has a wide discretion in admitting evidence, and evidence tending to show the relation of the parties, the purpose of the combination and the preliminary steps taken to effect that purpose is within the scope of the investigation by the jury.

11. SAME—*in a conspiracy, conversations of one are admissible against all.* In a conspiracy prosecution, if the conspiracy is shown, the acts and conversations of one of the conspirators are admissible against the others.

12. SAME—*when letters are admissible to prove knowledge and intent.* In a prosecution against the cashier of a bank and other persons for a conspiracy to obtain money from the bank by false pretenses through the means of worthless checks and drafts, letters to the cashier from another bank and found among his correspondence after he was deposed, warning him of the worthlessness of certain checks and drafts passing through his bank, are admissible for the purpose of showing his knowledge, motive and intent.

13. SAME—*proof of attempt to settle civil liability is incompetent.* In a prosecution for conspiracy to obtain money from a bank by false pretenses, proof that one of the defendants, after the conspiracy had been consummated, assigned an insurance policy to the bank in an attempt to settle for the civil liability, has no bearing upon the question of the conspiracy and is incompetent.

14. TRIAL—*correct practice where question is proper but answer contains improper matter.* If the question put to a witness

for the People is a proper one he should be allowed to answer it, and if there is anything improper in his answer defendant should move to strike it out.

15. SAME—*permitting the People to introduce evidence after closing case is a matter of discretion.* Permitting evidence to be introduced by the People after closing the case but before any evidence has been put in for the defense is a matter resting solely in the sound discretion of the trial court.

16. APPEALS AND ERRORS—*when admission of incompetent testimony will not reverse.* If the competent evidence clearly justifies a conviction in a criminal case the admission of incompetent testimony will not be reversible error, if it appears that such testimony could not have reasonably affected the result.

17. SAME—*action in admitting evidence cannot be considered unless properly preserved for review.* The action of the trial court in admitting improper evidence in a criminal case cannot be considered by the Supreme Court where no question was raised by objecting to the evidence, moving to exclude it, or otherwise.

18. SAME—*effect where objection is made after one witness has testified.* If one witness for the People has been allowed by the defendant to testify to a matter without objection or motion to exclude, the fact that another witness is allowed to testify to the same matter over the defendant's objection and exception does not injure the defendant.

19. SAME—*when the Supreme Court cannot consider alleged improper statements of counsel.* Alleged improper statements of counsel for the People in his argument to the jury cannot be considered by the Supreme Court, where the defendant did not object to such statements and except to the trial court's ruling thereon or to its refusal to make any ruling.

20. AMENDMENTS—*when amendments of record are properly allowed.* Where the record of a criminal case as originally written up is headed, "County Court Record, Criminal," but other parts of the record clearly show that the indictment was returned and the trial had in the circuit court, the heading may be amended to show the truth; and the amendment of a date and the correction of similar errors is proper, where there are sufficient facts in the record upon which to base the amendments.

21. ARREST OF JUDGMENT—*when it will be presumed that the grand jury was properly organized.* Where the record shows that a grand jury was called, empaneled and sworn and that a certain person was appointed and sworn as foreman, it will be presumed, on motion in arrest of judgment, that the grand jury was properly organized, even though names of all grand jurors are not shown.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Jackson county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

W. F. ELLIS, WILLIAM P. WILSON, and FRED G. BIERER, (R. J. STEPHENS, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, and ISAAC K. LEVY, State's Attorney, (JOHN M. HERBERT, W. A. SCHWARTZ, OTIS F. GLENN, and JUNE C. SMITH, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was indicted jointly with W. B. Smith, in the circuit court of Jackson county, charged with conspiracy to obtain money by false pretenses from the Elkville State Bank. On a trial in that court both were convicted and sentenced to the penitentiary. A writ of error was sued out in the Appellate Court for the Fourth District and afterwards dismissed as to the said Smith. Thereafter the judgment was affirmed in that court as to plaintiff in error, and this writ of error followed.

In May, 1906, W. B. Smith and R. P. Samuels went to Elkville, Jackson county, a village of about one thousand inhabitants, to organize a bank. They were strangers in the community, but Smith represented that Samuels was a young man who had recently inherited a large sum of money and wanted to embark in the banking business, and that he (Smith) was financially interested in a large number of business enterprises throughout the country, including some sixty-six different banks, as well as lumber and telephone companies. They proposed that a bank should be started in Elkville with a capital stock of $25,000, taking together $10,000 and leaving local parties $15,000; that all the directors and officers, except the cashier, should be

selected from the local men, but that Samuels should be
appointed cashier. Smith appears to have subscribed for
$7500 and Samuels for $2500. They succeeded in getting
more than $15,000 subscribed by local subscribers, and Sam-
uels told some of them, before the bank was organized, that
he had bought Smith's stock. It was apparently agreed be-
fore the charter was taken out that Samuels should only
take $5500 of stock. There is nothing in the record show-
ing that Samuels at any time had means, present or pros-
pective, to pay for his subscription. Early in September,
when plans were being perfected to open the bank within a
few days, Samuels stated to some of the other subscribers
that he was having difficulty in raising the money for his
subscription. He obtained from James S. Nall, plaintiff in
error, a check for $1500 on the Missouri Valley Bank of
Grand Tower, Jackson county, Illinois, of which Nall was
president. This check was enclosed in a letter sent by Nall
and found in Samuels' possession, which letter reads:

"GRAND TOWER, ILL., *Sept. 12, 1906.*
*"R. P. Samuel, Elkville, Ill.:*

"DEAR SIR—Enclose find ck. for $1500. Now, don't you use
this check till the day you open, and when you do, send me your
check for same amount. I have a check on you for $366.33 drawn
by Smith. Is it O. K.? If it's O. K., the day you open place it to
my credit, and don't you tell Joyner any about W. B. nor the deal
we have.          "Your friend,          J. S. NALL."

The person called "W. B." in this letter is shown by the
evidence to be W. B. Smith, one of defendants on the trial.

With this check, and $4000 borrowed in East St. Louis
by putting up his shares of stock as collateral, Samuels was
able to make a showing of payment for the stock. It ap-
pears from the evidence that Samuels complied with the re-
quest in Nall's letter above quoted, by sending a check for
$1500 to Nall, and that he only paid for his $5500 worth
of stock $400 of his own money, using $1100 of the bank's
money to apply on the payment of Nall's check. After
Samuels had been deposed as cashier the $4000 borrowed

in East St. Louis was paid by the bank through the sale of the stock subscribed by him. The other subscribers having paid for their stock in full, a final certificate of incorporation was obtained and the bank opened for business on September 18, 1906, with Samuels as cashier. Shortly thereafter worthless checks and drafts aggregating several thousand dollars were sent to Samuels by Smith, and some of less amounts by Nall, to be credited in each instance as a cash deposit, and against which checks were drawn before the worthless drafts could be returned in due course of business. About the first part of October some of the officers of the bank discovered Samuels' dealings with Smith as to these drafts, and on October 12 they took possession of the bank and refused to allow Samuels to have anything further to do with its business. In a drawer in the bank numerous letters from Smith to Samuels were found which showed clearly the purpose they had in organizing the bank, and in this same drawer was found the letter from Nall heretofore set out. At this time it was discovered that the bank had been defrauded, by means of these worthless drafts and checks, of $5691.33, of which the proof showed Smith received $5191.33 and Nall $500. The evidence is voluminous, relating to the letters, drafts and checks and the transactions of plaintiff in error, Smith and Samuels and other parties, in the opening and carrying on of this bank. We shall not attempt to set it out further in detail here, but will refer later to some of the evidence in connection with the various questions considered in the opinion.

The contention is made that the court erred in refusing to quash the indictment, because, it is argued, one of the special attorneys for the State appeared before the grand jury during its consideration of the indictment, and that the indictment was on that account tainted with malice, if not with corruption, and the court should have quashed it. It appeared from the testimony of the foreman of the grand jury and of the special counsel in question that the

242—19

latter was called before the grand jury which returned this indictment, but both these witnesses testified said counsel was not asked any questions with reference to the indictment here in question. This court has held it is proper to prove by members of the grand jury that witnesses have testified differently before that body than they did in the trial of the case. (*Hoge* v. *People,* 117 Ill. 35; *Bressler* v. *People,* 117 id. 422.) But this court has also held in *Gitchell* v. *People,* 146 Ill. 175, after a review of the authorities, that the members of the grand jury cannot impeach their return of the indictment, and that the same principle which forbids such disclosures by grand jurors applies to all persons authorized by law to be present in the grand jury room. We do not think the court erred in refusing to permit the questions to be answered showing what the special counsel testified to before the grand jury or in refusing to quash the indictment because of his appearance before that body. We find nothing in the record indicating that there was any improper conduct on the part of the grand jury or this attorney.

Before the opening of the trial counsel for the plaintiff in error moved for a bill of particulars. This motion was allowed, and on the bill being furnished counsel asked for one more specific. This motion was overruled, and it is contended that thereby the court erred. The requiring of a bill of particulars is in the sound discretion of the trial court. It is only when it is made to appear that the defendant cannot properly prepare his defense without a bill of particulars that the court will require the State to furnish one. (*Kelly* v. *People,* 192 Ill. 119; *DuBois* v. *People,* 200 id. 157; *People* v. *Smith,* 239 id. 91.) The same general rules must necessarily govern as to furnishing a more specific bill of particulars. Plaintiff in error has not shown how he was in any way surprised or injured by the failure to supply a more specific or further itemized bill of particulars. The refusal of this motion was not error.

A motion was made at the opening of the trial and before the selection of the jury, for the State to elect whether it would prosecute on this indictment or on another which had been returned by the same grand jury, charging the plaintiff in error and Smith with a confidence game. It is insisted that these two indictments covered the same transaction, and therefore were in violation of the constitutional safeguards afforded citizens, and a species of oppression which ought not to be tolerated. A question of this nature could not be thus raised. If plaintiff in error were put on trial under the second indictment it would not necessarily follow, even though that indictment were based on the same act or series of acts as this, that this sentence would be a bar to such prosecution. A person by one act may commit, in law, several offenses. *Nagel* v. *People,* 229 Ill. 598.

Before the jury were selected counsel moved for a continuance on the ground of absence of witnesses. This motion was supported by affidavits. The court ruled that the affidavit as to one of the witnesses was sufficient to require a continuance unless the State admitted that such witness, if present, would testify to the facts set out in the affidavit. The State did so admit, and thereupon the court overruled the motion for continuance. One of the witnesses afterward appeared and testified. It is urged that the court erred in overruling the motion for continuance because of the absence of one of the other witnesses. We cannot agree with this contention. The affidavit as to that witness did not set up facts but merely conclusions. If the witness had been present it would not have been proper to permit him to swear to such conclusions.

Plaintiff in error insists that the indictment is not sufficient in law. In each count it charges, in substance, that Smith and Nall, together with R. P. Samuels, "who is now deceased," conspired and agreed together with the fraudulent and malicious intent to feloniously, wrongfully and wickedly obtain from the Elkville State Bank a large sum

of money, etc. An indictment charging a conspiracy to do an unlawful act need not set out the means whereby the conspiracy is to be carried into effect. (*People* v. *Smith, supra,* and cases cited.) We think the indictment was sufficient. Indeed, counsel for plaintiff in error, while stating that the indictment is faulty, show by their argument that they mean rather that the evidence does not prove the allegations in the indictment, claiming that there is no proof that Smith and Nall conspired together, either between themselves or between themselves and Samuels, and that in order to convict under this indictment it is necessary to prove that three persons,—no more and no less,—conspired together. It was stated in *People* v. *Smith, supra,* on page 108: "Clearly, if three persons are named in an indictment as conspirators two may be convicted and one acquitted." Samuels died before the indictment was returned, but that does not prevent the indictment charging that he was one of the conspirators.

It is most earnestly insisted, however, by counsel for plaintiff in error, that the evidence does not show that Nall conspired with either Smith or Samuels. Said letter of September 12 from Nall to Samuels strongly indicates that Smith, Nall and Samuels were working together on some common plan and purpose and that all three were well acquainted. The other evidence in the record supports both of these conclusions. We think the evidence shows that the plan or purpose was to obtain money from the Elkville Bank by means of worthless checks and drafts. There is no force in the contention that this letter of September 12 could not properly be introduced because at that time the bank was not yet started and a conspiracy could not be shown against a corporation not in existence. The whole series of transactions leading up to the final consummation of the conspirators' purpose, both before and after the organization of the bank, are proper to be shown, including this letter. This court in *People* v. *Smith, supra,* held that

evidence showing such conspiracy preliminary to the organization of a bank was competent. It is especially and peculiarly the province of the jury to determine the weight of the evidence and the credibility of the witnesses, and a court of review will not set aside the verdict on the ground of insufficiency. of evidence unless it is "satisfied, from a careful consideration of the whole testimony, that there is reasonable doubt of the guilt of the accused." (*Flanagan* v. *People,* 214 Ill. 170; *People* v. *Deluce,* 237 id. 541.) The two defendants on the trial below only introduced one witness in their behalf. We think all the testimony in this record tends to show that there was a conspiracy to defraud this bank, and nothing was said by this one witness for the defense which seriously conflicted with the testimony of the State on this point.

Numerous objections to the admission and exclusion of evidence were made by counsel for plaintiff in error. In the admission of evidence in a conspiracy case much discretion is left to the trial court. The jury should have every fact that bears on the ultimate facts charged and that will assist them in coming to a conclusion as to such ultimate facts. (2 Wharton on Crim. Law,—9th ed.—secs. 1398, 1399, 1400; 2 Bishop on Crim. Proc.—3d ed.— sec. 234; *Regina* v. *Murphy,* 8 Car. & P. 297; *People* v. *Smith, supra; Williams* v. *People,* 54 Ill. 422; *Spies* v. *People,* 122 id. 1; *Commonwealth* v. *Smith,* 163 Mass. 411; *Commonwealth* v. *Spink,* 137 Pa. St. 255; 8 Cyc. 678, and cases cited.) Evidence tending to show the relation of the parties, the purpose of the combination and the preliminary steps taken to effect that purpose is within the scope of the investigation to establish the conspiracy. The conspiracy once being shown, acts and conversations of one of the conspirators are admissible against all. The evidence showing the conversations with Samuels the day he was deposed as cashier and the day after comes within these rules. The letters to Samuels from the cashier of a bank

in East St. Louis warning him of the worthlessness of certain drafts and checks passing through his bank previous to the time he was deposed, and found with his correspondence, tended to prove his knowledge, motive and intent, and we are disposed to hold the letters admissible for that purpose. (See for a discussion of this subject, Wharton on Crim. Evidence,—8th ed.—secs. 644, 682, and *Commonwealth* v. *Waterman,* 122 Mass. 43.) Furthermore, we can not see how the introduction of these letters in any way injured the plaintiff in error. Other evidence in the record showed conclusively that most of the paper that these letters warned Samuels against was absolutely worthless. Indeed, the only witness who testified for the defense admitted, on cross-examination, that much, if not all, of the paper referred to in said letters was without any value. If competent evidence clearly justifies a conclusion in a criminal case, the admission of incompetent testimony will not be reversible error if it appears that such testimony could not have reasonably affected the result. *Jennings* v. *People,* 189 Ill. 320; *Wistrand* v. *People,* 218 id. 323.

It is further insisted that the court erred in permitting some of the witnesses for the State to testify that the stockholders paid an assessment to make up the deficit caused by the loss sustained through the payment of worthless drafts and checks to Smith and Nall. The first witness for the People testified to this fact, and no objection was made to the introduction of such testimony nor was any motion made to strike it out. The action of the trial court in admitting improper evidence in a criminal case cannot be considered in the Supreme Court where no question as to the matter was raised by objecting to the evidence, moving to exclude it, or otherwise. (*People* v. *Anderson,* 239 Ill. 168.) It is true, that when a witness was later asked the same question, objection was made and exceptions taken by counsel for plaintiff in error. The evidence having been gone into fully previous to that, we cannot see how the tes-

timony of another witness to the same effect in any way injured plaintiff in error.

It is further insisted that the court committed reversible error in refusing to admit the copy of an assignment of policy of marine insurance made by Smith to said bank. No proper foundation was laid for the admission of the copy, and for that reason the court did not err in making that ruling.

It is further insisted that the court erred in permitting a witness to answer that he had consulted a lawyer. This evidence was largely brought out on cross-examination by counsel for plaintiff in error. Plaintiff in error had previously attempted to show that if proper steps had been taken to collect this policy there would have been no loss from failure to collect the worthless drafts and checks. The State asked of the witness in question, "Do you know why the bank could not realize on the assignment?" and when he answered "yes," he was asked to tell the jury why. This was objected to. The question was proper. If there is anything in the answer that was improper, plaintiff in error should have moved to strike it out. This was not done. On cross-examination counsel for plaintiff in error drew from this witness the statement that he had consulted a lawyer and had been told that they could not realize on the assignment of the insurance policy. Furthermore, we are disposed to hold that the entire evidence with reference to the assignment of this policy was incompetent. The proof with reference to this was first put in by the defense, and all the transactions with reference thereto happened after the conspiracy had been consummated and Samuels had been removed as cashier. The evidence especially objected to was with reference to acts that occurred five or six months thereafter. The assignment of this policy was plainly an attempt to settle for the civil liability. Even if the civil liability had been paid in full it would not prevent the prosecution for conspiracy. (Hurd's Stat. 1908,

chap. 38, div. 1, sec. 43, p. 719; *Ford* v. *Cratty,* 52 Ill. 313; *Young* v. *People,* 193 id. 236.) The introduction of this testimony could have no bearing on the question whether there had been a conspiracy to defraud the bank.

It is further insisted that the court erred in permitting evidence to be introduced by the State after it had closed its case but before any evidence had been put in for the defense. This is a question that rested solely within the sound discretion of the trial court. (*Graff* v. *People,* 208 Ill. 312.) In any event, this evidence then introduced was purely as to a formal matter and could not have surprised the defendant. We do not think the court erred on this question.

Objections are raised in the briefs to many of the instructions. It is said that some of them are abstract and therefore erroneous; that others are not based on the evidence; that some improperly single out particular facts; that some leave to the jury questions of law, and that still others are wrong because they tend to confuse the jury. We think the jury, taking all the instructions given, were fully and fairly instructed on the questions presented. Some of the instructions are not strictly accurate, but a court of review will not always reverse a case even though some of the instructions are technically wrong. *Bleich* v. *People,* 227 Ill. 80; *People* v. *Casey,* 231 id. 261; *Dacey* v. *People,* 116 id. 555.

It is further contended that reversible error was committed on the trial in the closing arguments of the prosecuting attorney to the jury. These remarks were not taken down at the time by the reporter or in longhand, but upon a motion for new trial plaintiff in error filed affidavits setting forth what he alleged were the remarks in question. The affidavits were made a part of the bill of exceptions, but the judge does not certify that the statements made in the affidavits are true, but merely, as we read the record, that the affidavits were filed. If counsel wanted to raise

the question here, they should have insisted on having the alleged statements of the prosecuting attorney preserved by bill of exceptions in the usual way. (*Clark* v. *People,* 224 Ill. 554.) Under the decisions of this court we do not think the question has been properly preserved on this record. (*Mayes* v. *People,* 106 Ill. 306; *Dreyer* v. *People,* 188 id. 40; *Gallagher* v. *People,* 211 id. 158.) Even though the facts were properly preserved by bill of exceptions, plaintiff in error is in no position to take advantage of the objection. The affidavits state that objections were made to certain remarks of the prosecuting attorney and the court did not rule on the objection. It does not appear that any exception was taken to the court's failure to rule. A party litigant can only object to a ruling here when he has objected and excepted in the trial court or excepted to the failure of that court to act. *McCann* v. *People,* 226 Ill. 562, and cases cited.

The further objection is made that the court erroneously ordered certain changes to be made in the record after the trial. This case, as we have stated, was tried in the circuit court of Jackson county. The heading of the record as originally written up was, "County Court Record, Criminal." Other parts of the same record show clearly that the indictment was returned and the trial was had in the circuit court. The court ordered the word "county" stricken out and the word "circuit" put in its place. In one place in the record the date was given as April 8, 1901, while in other places in the same record the same date, as intended, was given as April 8, 1907. The court ordered the clerk to change the "1" to "7," so that the date would be April 8, 1907. Several other changes were made of similar errors. The facts in the record were sufficient upon which to base these amendments. There was no error in the court's order in this regard. *Kennedy* v. *People,* 44 Ill. 283; *Gore* v. *People,* 162 id. 259; *Knefel* v. *People,* 187 id. 212.

It is argued that the record as amended does not sufficiently show the return of the indictment. As we understand the point made here, it is claimed that the names of all the grand jurors are not shown. The record, however, does show that the grand jury was called, empaneled and sworn and that a certain person was appointed and sworn as foreman. This question was first raised on motion in arrest of judgment. It will be presumed on that motion on this record that the grand jury was properly organized. *Williams* v. *People, supra; Barron* v. *People,* 73 Ill. 256; *Sullivan* v. *People,* 156 id. 94.

In our opinion the evidence justified the jury in finding that plaintiff in error, Nall, took part in this conspiracy.

We find no reversible error in the record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*